WILLIAM A. STEVENS, attorney-general, complainant-respondent,

*v.*

JAMES J. WALLACE et al., defendants; WILLIAM WELLMAN, IRVING H. FRANCIS, BANK OF GREENBRIER and HUDSON DISPATCH, INCORPORATED, appellants.

[Argued May 17th, 1932.  Decided October 17th, 1932.]

*Mr. Richard Doherty, Mr. Morgan R. Seiffert, Mr. Joseph M. Schoenburg* and *Mr. David Saperstein,* for the appellants.

*Mr. Atwood C. Wolf, pro se,* as receiver, and *Mr. Richard C. Plumer,* assistant attorney-general, for the respondent.

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR.

Proceedings were taken by the attorney-general, by bill, under the statute commonly known as the "blue sky law," officially designated as the "New Jersey Securities act" (*P. L. 1927 p. 138,* as amended by *P. L. 1929 p. 773*), against the defendants James J. Wallace, trading as James J. Wallace, individually, and James J. Wallace, Alfred Leonard, George Clayton and Gordon F. Allen, trading as Wallace & Company.

This bill was filed October 10th, 1929, and upon the filing thereof a rule to show cause issued directed to the defendants. After a hearing upon such rule to show cause and on June 18th, 1930, a final decree was entered adjudging the defendants guilty of violation of the aforesaid act, enjoining them from further conducting and carrying on their business and, particularly in the stock and securities of the New Mexico Copper and Manganese Corporation; appointing a receiver with all powers conferred upon said officer by the aforesaid act; requiring the defendants to turn over to such receiver

all property of every description derived by them by means of the illegal practices prohibited by such statute, together with all property of the defendants which might have been commingled therewith and that such receiver collect, hold and dispose of such property under direction of the court as provided in such statute.

The receiver came into possession of some $57,000; the total claims of persons who had been defrauded by the prohibited practices of Wallace & Company aggregated $241,154.92; certain claims designated as "contractual indebtedness" aggregating $42,047.99 were disallowed by the receiver. The balance in the receiver's hands, after deducting expenses of $7,136.03 is $48,931.48. All of this is shown by the report of the receiver.

There are four appellants, namely, William Wellman, Irving H. Francis, the Bank of Greenbrier and The Hudson Dispatch, Incorporated. The status of these appellants is not entirely identical.

It appears that exceptions to the receiver's report were filed by all of these appellants, at least such is the recital in the order advised by the vice-chancellor of July 16th, 1931, from which each of the foregoing parties, by their respective petitions of appeal, are appealing.

The receiver disallowed the claims of the appellants either entirely because they did not arise or have their origin in the prohibited fraudulent stock transactions of the defendants or refused to give them preference over other claims where they did so arise and had their origin.

Before these respective appeals can be properly disposed of it is necessary to consider their origin and the particular grounds of appeal urged by each appellant.

In the appeal of William Wellman, his counsel says, he "was not the victim of any inhibited practice but was the holder of a note of Wallace for $15,000." He commenced an action to recover upon this note against Wellman in the supreme court of Queens county, New York, and recovered judgment in such action on July 28th, 1930, for $15,810.45.

After obtaining such judgment he brought suit thereon in

the Hudson circuit, of this state, on September 12th, 1930, and obtained a final judgment October 29th, 1930, for $16,026.51 and issued execution thereunder. The bill in the present case had been filed October 10th, 1929, and on November 13th, 1930, Wellman filed a petition setting up the indebtedness due him, the entry of judgment in the Hudson circuit, and the execution issued thereunder, and that the defendant Wallace had no assets from which he could have a recovery under his judgment other than the funds in the hands of the receiver under these proceedings. The prayer of his petition was that he might be joined as a party complainant or defendant under the proceedings instituted by the attorney-general. This application was denied.

Neither before this proceeding, upon his part, nor thereafter, did he file any claim with the receiver. We are, therefore, unable to see, or understand, how he was in a position to except to the receiver's report or have any standing to appeal from the order of July 16th, 1931, confirming such report.

We will, however, consider the grounds of appeal urged by this appellant for the reasons hereafter given as moving us so to do.

As to the appellant, Irving H. Francis, it appears that he caused a writ of attachment to issue out of the first district court of Jersey City upon an affidavit setting up that Wallace and Wallace & Company, by fraud, induced him to purchase shares of stock of the New Mexico Copper and Manganese Company and funds of Wallace and Wallace & Company in the Labor National Bank were attached, October 30th, 1929, and judgment was entered in this action and subsequently a levy was made upon the funds of Wallace and Wallace & Company in the Labor National Bank. Later a claim was filed with the receiver and he allowed it as a general claim.

What the claim of the appellant the Bank of Greenbriar is does not affirmatively appear except as may be gathered from its proof of claim to the receiver which appears to show that it was upon a check issued by Wallace & Company to one Henry C. Jackson on September 9th, 1929, for $960 to repay

to Jackson moneys of which he had been defrauded by Wallace & Company in the purchase of stock of the New Mexico Copper and Manganese Company, which check had been endorsed over to said bank and had not been paid. On November 4th, 1929, the bank, as holder and owner of this check caused a writ of attachment to issue directed to Wallace & Company attaching funds of the latter company in the Labor National Bank. In this proceeding an appearance was entered for Wallace & Company but no answer being filed by it, judgment by default was entered November 30th, 1929, and execution issued and levy thereunder was made upon funds in the Labor National Bank. Upon proof of this claim made to the receiver he allowed it as a general claim.

The claim of the appellant Hudson Dispatch, Incorporated, is for printing done for the defendant, Wallace & Company. A writ of attachment was issued at the suit of this appellant May 16th, 1930, and under it moneys in the Labor National Bank were attached but, beyond this, nothing further was done and no judgment was entered. A proof of claim was filed with the receiver and by him rejected, *in toto,* upon the ground that it arose as the result of a contract between the appellant and the defendants and for that reason the appellant was not of that class of creditors that the Securities act was designed to protect and aid.

Considering first the appeal of Wellman we find this argued under six points.

1. The receiver's possession of the entire property of Wallace, which he seized, was in plain disregard of the limitations of the statute.

The answer to this is that the report of the receiver negatives this contention.

2. The property in receiver's hands was leviable to satisfy the exceptant's judgment until exempted by some judicial decree that fraud claimants had established a paramount interest therein.

Here it seems to be urged and argued that claimants entitled to participate in the funds in the hands of the receiver should have been required to establish such right by suit or

some other judicial proceeding, so that thereby, appellant, might have been put in a position where he could combat and attack such right.

The answer to this is that the right to participate is primarily such proof as satisfies the receiver and from whose findings there is appeal to the court upon the part of other claimants, but here this appellant had not, and persistently refused, to file a claim with the receiver and by that stand foreclosed himself of the very right that he is now claiming was denied him.

And here it seems to us to be proper to give our reasons why we previously have said that we cannot understand how this appellant has any standing upon this appeal. The receiver so insists and we think properly.

After obtaining judgment in this state upon his judgment, originally entered in New York, he issued execution and then petitioned the court of chancery to be admitted in the present cause as a party, "complainant or defendant in the above entitled cause and that the court may by order direct the receiver appointed herein to pay over to the sheriff of Hudson county the amount of said execution in satisfaction of the judgment aforesaid." This was November 13th, 1930.

The final decree in the original cause was entered June 18th, 1930, and by such decree the receiver was appointed. Appellant's judgment in the Hudson circuit was not entered until October 22d, 1930. However, upon the presenting of this petition by appellant, a rule to show cause issued dated November 13th, 1930, returnable December 1st, 1930, and evidently was heard on that day because by order bearing that date the rule to show cause was discharged and the application for leave to intervene was denied.

It does not appear that any appeal was taken from this order nor is it suggested by the appellant that any was taken. He filed no claim with the receiver but appears to have filed exceptions to the report of that officer of the court although we are at a loss to know how he had any standing permitting him to do so.

The vice-chancellor who heard, and passed upon, the ex-

ceptions filed by the several parties gave no reasons for his conclusion that the exceptions should be dismissed and the receiver's report be confirmed. For all that appears before us the vice-chancellor, in advising the order of July 16th, 1931, appealed from, dismissing the exceptions and confirming the report may have been moved and controlled in the case of this appellant by the fact that he had no standing as a claimant, inasmuch as he had neither filed nor proved his claim.

Section 7 of the Securities act, *supra,* provides that receivers thereunder shall have the right to dispose of the property of the defendants under the direction of the court of chancery. This means, if anything, that the same procedure shall prevail and be followed as in other receivership matters. Such procedure is too well known to need citation of authority.

The appeal of this appellant, for this reason, might well be dismissed, but, the grounds of appeal urged by other appellants are such and the matter is of such importance as to move us to consider the grounds urged by this appellant in connection with the others.

3. The third ground urged by this appellant is: the exceptant was and is deprived of the right to satisfy his judgment without due process of law.

Hereunder it is urged and argued that appellant was denied due process of law.

(a) By denial of his application to be made a party to the proceedings.

(b) By the receiver's assumption of the control of the property of the defendants without any judicial decree determining that such property was derived through fraud and that as a creditor he was entitled to notice and a hearing.

(c) By the receiver's determination according preference to fraud claimants and by the decree below confirming such determination and report and which decree was likewise entered without notice to appellant and without furnishing him with an opportunity to be heard.

We have already dealt with all of these matters and nothing need be added to what we have already said in disposing of them.

4. If construed to mean that creditors whose claims are based on fraud have a right to be satisfied out of the general estate superior to the right of the exceptant (appellant) as an ordinary creditor, the statute denies to him the equal protection of the laws, in violation of the fourteenth amendment.

This refers to the constitution of the United States.

Here appellant seems to concede that the Securities act, *supra,* is a legislative enactment permitted by the police powers of the state, but he urges that if such act is to be construed as requiring and permitting only claimants whose rights and claims accrue through and from the inhibited fraudulent practices proscribed by the act to participate in the funds so illegally and fraudulently obtained and accumulated, to the exclusion of all other creditors, then the act is unconstitutional bcause it is "unreasonable, arbitrary and illusory."

We conclude that this ground is wholly unsubstantial and without merit in reason and law, for the reason that from the beginning and ever since, the law very righteously has been that a thief shall not profit by his nefarious and criminal acts and the property in such ill-gotten gains, never, in law, resides in him, but always remains in the victim from whom he took them. So likewise is the law respecting property obtained from another by fraudulent means and practices. In all such cases the law immediately sets up a constructive trust—the malefactor holding such property, in the eyes of the law, in trust for the use and benefit of those who contributed of their properties thereto through and because of such fraud.

In *39 Cyc. 170,* it is said: "Constructive trusts arise by operation of law and not by agreement or intention and are not within the statute of frauds or statutes prohibiting parol trusts. Fraud, actual or constructive, is the basis of such a trust and a court of equity will not permit a person to shield himself behind the statute of frauds in order to perpetrate a fraud."

Our reports are full of cases where this doctrine has been asserted and employed.

In the case before us the legislature has declared that certain practices are fraudulent and prohibited; the court below

has found that such charges as against the defendants were established and that finding is not here attacked; the funds in the hands of the receiver are the result of and, it may be said, the reward of such fraudulent activities and created and accumulated in the hands of the defendants because of such practices and from the property of a large number of claimants who were the victims of such practices.

We conclude that, by all reason and precedent, the title to such funds is in these parties and never was, and is not now, in the defendants and therefore never was legally answerable for the general debts of the defendants.

5. The act if construed to create a preference in favor of creditors victimized by the means specified, violates article 4, section 7, paragraph 11, placitum 7, of the state constitution prohibiting special laws granting an exclusive privilege.

This, we think, we have fully answered to the contrary under the last ground urged by this appellant.

6. The act embraces objects not expressed in the title; and, as a general law, embraces a provision of a private character in violation of article 4, section 7, paragraph 4, of the state constitution.

Under this point the appellant's contention is that the title of the act directs one to certain unlawful practices and the investigation and prevention thereof, in which respect it is constitutionally good, but it does not in its title direct attention to the appointment of receivers or the distribution of property to defrauded claimants and in that respect it is constitutionally deficient.

The title of the act is: "An act declaring unlawful certain practices in connection with the issuance, sale, offer for sale, purchase, offer to purchase, promotion, negotiation, advertisement or distribution of securities within this state, and providing for the investigation and prevention of such practices."

A more comprehensive title it would be difficult, if not impossible, to suggest.

This question of titles of legislative acts being, or not being, in consonance with the constitutional requirement has

never been more tersely and exactly defined than by the opinion of Mr. Justice Garrison, in *Gottuso* v. *Baker, 80 N. J. Law 520,* in which it was held, and ever since has been followed as a precedent, and without dissent, by our judiciary, "under our constitutional provision the title of an act is in the nature of a label by which the object of the act is displayed; it is not a table of contents or an index to everything that the statute enacts."

We consider this a sufficient and complete answer against the substantiality of anything raised by this point.

Under the appeals of Irving H. Francis and the Bank of Greenbrier, the grounds of appeal are identical and may be said to be that both appellants having claims growing out of the fraudulent practices of the defendants and both having judgments in proceedings initiated by attachment were entitled to a preference in having their judgment claims paid in advance of other claims not reduced to judgment.

We consider that the complete and exact answer to this is paragraph "a" section 7, of the Securities act, *supra,* which provides for the appointment under section 6 of a receiver for "all the property of every description derived by means of any practice declared to be illegal and prohibited by this act * * * and hold and dispose of the proceeds thereof, under the direction of the court of chancery *for the equal benefit of all who establish an interest therein* by reason of the use and employment by the defendant of any practices herein declared to be illegal and prohibited * * *."

It appears to us that this language expresses a clear and unmistakable legislative purpose, founded, as we have before shown, upon reason and legal precedent, that all parties who make proof of their claims, arising through such prohibited practices are to share equally in the fund so created and that notwithstanding that their claims may have, by their activity in advance of others of like character, been put in the process of legal proceedings or even reduced to judgment.

There remains to be considered the appeal of the Hudson Dispatch, Incorporated.

Here the claim did not arise because of the fraudulent

activities of the defendants and proceedings to enforce payment had been instituted by attachment although nothing further was done in such action other than to serve the writ.

There are but two grounds of appeal contained in the petition of appeal of this appellant and they both go to practically the same point, namely, that because of its proceedings in attachment its claim was entitled to be paid and that with priority over other claims in which no proceedings to enforce payment had been made.

This question has already been disposed of contrary to the contention of this appellant and to this may be added that the claim of the appellant is not of a person defrauded and deprived of his property by the prohibited practices of the defendants and, therefore, under no circumstances could the appellant participate in the funds in the hands of the receiver.

We conclude, therefore, that the order or decree appealed from should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.